# SEND

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE N. DINH, | ) Case No. SACV 06-1050-OP |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION; ORDER |
| v. | ) |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[2] now rules as follows with respect to the two disputed issues listed in the Joint Stipulation filed on June 12, 2007.[3]

---

[1] The Court has substituted the name of Michael J. Astrue, the current Commissioner of Social Security, as Defendant in the action.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 7, 10.)

[3] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation ("JS"), filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. §

(continued...)

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist and consulting psychologist; and

3. Whether the ALJ erred in rejecting Plaintiff's credibility.

(JS at 16.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984). The ALJ has a duty to fully and fairly develop the record even

---

[3](...continued)
405(g).

when the claimant is represented by counsel.[4]  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003).

## III.

## DISCUSSION

**A.  The ALJ Erred in Discounting the Opinions of Plaintiff's Treating and Examining Physicians.**

In the first disputed issue, Plaintiff argues the ALJ failed to provide the requisite specific and legitimate reasons for rejecting the opinions of Plaintiff's treating psychiatrist and examining psychologist.  (JS at 16-20.)

**1.  Dr. Greenzang**

On December 1, 1997, Plaintiff sustained an ankle injury while working as a pre-school teacher.  On November 3, 1999, Plaintiff reported to Dr. Michael J. Einbund, M.D., her treating orthopaedic surgeon, that she had become depressed.  (AR at 157.)  Dr. Einbund diagnosed "possible depression; secondary to chronic pain," and referred Plaintiff for psychiatric consultation.  (AR at 159.)  Plaintiff began treatment with Dr. Ted R. Greenzang, M.D., her treating psychiatrist, on December 20, 1999.[5]  Dr. Greenzang prescribed Paxil, but as of June 8, 2000, Plaintiff reported she had not taken the medication and was feeling better.  Dr. Greenzang issued an Axis I diagnosis of depressive disorder not otherwise specified, psychological factors affecting medical condition, anxiety and

---

[4] The duty is heightened when the claimant is not represented by counsel. Celaya, 332 F.3d at 1183; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005), 400 F.3d 676, 682-83 (9th Cir. 2005) (the Ninth Circuit distinguished Burch from Celaya at least in part, based on the fact that Burch was represented by counsel).

[5] The Administrative Record does not include records from Dr. Greenzang relevant to Plaintiff's treatment in 1999 and 2000.  However, Dr. Einbund detailed Dr. Greenzang's findings in his October 3, 2001, report.  (AR 194-96.)

depression impacting upon headaches. The Axis II diagnosis was dependent, avoidant, and obsessive compulsive personality traits. Dr. Greenzang considered Plaintiff's residual permanent psychiatric impairment to be between slight to moderate and moderate. Dr. Greenzang recommended Plaintiff "avoid contacts with the public or fellow workers or work environments that produce situations that would give rise to emotional stress." (AR 195.) Dr. Einbund ultimately adopted and incorporated Dr. Greenzang's assessments and opinions as his own. (AR 196.)

Plaintiff again began treatment with Dr. Greenzang on April 11, 2002. (AR 253.) On May 4, 2004, Dr. Greenzang reported that Plaintiff continued to manifest prominent dysphoric symptoms, such as self isolation, difficulty concentrating, lack of motivation, and forgetfulness. (AR 217.) Dr. Greenzang's Axis I diagnosis was depressive disorder not otherwise specified, psychological factors affecting medical condition, anxiety, and depression impacting recurrent headaches. The Axis II diagnosis was dependent, avoidant, and obsessive compulsive personality traits. (AR 216.)

At that time, Dr. Greenzang opined that Plaintiff was slightly impaired in her ability to follow simple instructions and perform simple repetitive tasks due to her distractibility, irritability, and the emotional handicap precipitated by physical symptoms. (AR 217.) Dr. Greenzang considered Plaintiff's ability to interact with co-workers to be between slightly to moderately and moderately impaired due to her isolation, irritability, distractibility, and diminished frustration tolerance. Further, Dr. Greenzang concluded Plaintiff's ability to handle the stress in normal work is moderately impaired due to her dysphoric state, isolation, distractibility, irritability, diminished frustration tolerance, and the emotional handicap precipitated by her physical symptoms. (AR 218.) Finally, Dr. Greenzang reported that Plaintiff "does manifest a marked constriction in her activities and limitations in functioning due to the combination of her physical and emotional

symptoms." (AR 218.)

On December 15, 2004, Dr. Greenzang completed a psychiatric/ psychological impairment questionnaire. (AR 253-60.) In addition to the findings detailed above, Dr. Greenzang rated Plaintiff's Global Assessment of Functioning at 60. (AR 253.) Dr. Greenzang listed the positive clinical findings as including, poor memory, appetite disturbance, sleep disturbance, mood disturbance, anhedonia, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, blunt, flat or inappropriate affect, decreased energy, generalized persistent anxiety, and hostility and irritability. (AR 254.) Dr. Greenzang's diagnosis was supported by Plaintiff's performance on the Multiscore Depression Inventory, which demonstrated Plaintiff was tired, lethargic, confused, and forgetful. (AR 254.)

Dr. Greenzang concluded Plaintiff was mildly impaired in her ability to remember locations and work-like procedures and to ask simple questions or request assistance. (AR 256, 257.) Dr. Greenzang found Plaintiff to be mildly to moderately impaired in her ability to understand, remember, and carry out one or two step instructions, sustain an ordinary routine without supervision, work in coordination with or proximity to others without being distracted by them, make simple work related decisions, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness, be aware of normal hazards and take appropriate precautions, and travel to unfamiliar places. (AR 256-58.) Dr. Greenzang concluded Plaintiff was moderately impaired in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, complete a normal workweek without interruptions from

psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, and set realistic goals or make plans independently. (AR 256-58.) Finally, Dr. Greenzang concluded Plaintiff was incapable of tolerating even low stress and would likely be absent from work more than three times a month as a result of her impairment. Dr. Greenzang did not believe Plaintiff to be malingering. (AR 259-60.)

The ALJ rejected the findings of Dr. Greenzang. (AR at 20.) The ALJ's stated rationale for rejecting Dr. Greenzang's opinions and assessments was as follows:

> . . . Dr. Greenzang concluded that the claimant's Global Assessment of Functioning (GAF) score was 60, indicating no more than moderate difficulty in social, occupational or school functioning. Additionally, it is noted that the claimant admitted on December 22, 2004 that she was not taking the prescribed Zoloft any more because it was too strong for her. Noncompliance with her prescribed medications indicates to the undersigned that the claimant did not personally believe that she really needed anti-depressive medications or she would have suggested that a different medication be prescribed. This noncompliance with prescribed medications clearly erodes her credibility.

(AR at 20 (citations omitted).)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

"The treating physician's opinion is not, however, necessarily conclusive as

to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Where, as here, a treating physician's opinion is controverted by the opinions of other physicians of record, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). Nor is the ALJ's obligation relieved where the treating physician has rendered an opinion on the ultimate issue of disability. See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

The first reason cited by the ALJ for rejecting Dr. Greenzang's assessment of Plaintiff's functional limitations, that the rating of Plaintiff's GAF at 60 is inconsistent with the severity of limitations alleged throughout his assessment, is specific but it is not legitimate or supported by substantial evidence in the record. As noted by the ALJ, a GAF of 60 indicates "moderate difficulty in social, occupational or school functioning." (AR 20.) To the extent that the assessment form allowed Dr. Greenzang to rate Plaintiff's level of impairment, he reported that her impairments were mild to moderate. (AR 256-59.) This is wholly consistent with a GAF score of 60. Having so assessed Plaintiff's limitations, Dr. Greenzang concluded she could not tolerate even low stress and would likely be absent from work as more than three times a month as a result of her impairments. In sum,

nothing in Dr. Greenzang's assessment is inconsistent with a GAF score of 60.

The Court also finds that the ALJ's second reason for rejecting Dr. Greenzang's findings, that Plaintiff was noncompliant with her prescribed medications, is specific but not legitimate. Certainly, Plaintiff's noncompliance with a prescribed course of treatment can be a legitimate reason to reject her credibility. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). However, Plaintiff's noncompliance can have no logical bearing on the professional opinion of a trained psychiatrist. Based on his clinical findings, Dr. Greenzang consistently found Plaintiff to be disabled due to her mental impairment and twice prescribed anti-depressant medication. That Plaintiff refused to take the medication does not alter the clinical findings or lessen Dr. Greenzang's ability to make a professional psychiatric assessment.

### 2. Dr. Scott

Examining psychologist Charles W. Scott, Ph.D., examined Plaintiff several times between June 16 and July 12, 2005. (AR 267.) Dr. Scott administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) and the Millon Clinical Multiaxial Inventory-III (MCMI-III). (AR 267.) Plaintiff's results on the MCMI-III were consistent with a moderate level of pathology and suggested that, although she usually is able to function on a satisfactory basis, she may experience periods of marked emotional, cognitive, or behavioral dysfunction. (AR 273.) Plaintiff's overall "level of psychological functioning reveals her to be markedly impaired in social and occupational functioning. She is clearly unemployable at this time." (AR 274.) Although Plaintiff's results indicated a slight exaggeration, Dr. Scott took this "into consideration in the overall evaluation of all results." (AR 273.)

Plaintiff's results on the MMPI-2 were consistent with an individual who suffers from a severe major depression with psychotic features. Plaintiff "clearly present[ed] a depressed, down, gloomy, hopeless feeling of herself." (AR 274.) These results indicated marked impairment and an inability to function

competently. Again, Plaintiff's results indicated a tendency toward exaggeration, which was considered by Dr. Scott in his evaluation. (AR 274.)

Ultimately, Dr. Scott concluded Plaintiff was genuinely disabled, markedly impaired socially and occupationally, and unable to work in any capacity. (AR 274, 275.) Dr. Scott added that Plaintiff exhibited "an observable marked restriction of activities of daily living and marked difficulty in maintaining social functioning and repeated episodes of deterioration and decompensation in work." (AR 274.)

The ALJ discussed Dr. Scott's findings and impliedly rejected them by adopting the contrary findings of consultative psychologist Halimah McGee, Ph.D. (AR 22.) However, the ALJ gave no reason for rejecting Dr. Scott's opinion, other than to state, "The undersigned takes particular notice of the fact that the capsule summary on page 3 of Exhibit 15-f stated that the claimant's response style may indicate a tendency to magnify illness and her scale scores may be somewhat exaggerated." (AR 21.)

As with a treating physician, the controverted findings of an examining physician may only be rejected by the ALJ for specific and legitimate reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d at 830-31.

To the extent the ALJ's note about Plaintiff's response style can be considered a specific reason for rejecting Dr. Scott's assessment, it is neither legitimate nor supported by substantial evidence in the record. Although Dr. Scott did acknowledge that Plaintiff's tests results indicated a certain level of exaggeration on her part, he carefully explained that he took this into consideration in the overall evaluation of the test results. (AR 273, 274.) Because Dr. Scott took account of Plaintiff's tendency to exaggerate and adjusted his findings accordingly, it would be improper to further discredit his professional assessment on this basis.

**B.    The ALJ Properly Evaluated Plaintiff's Credibility.**

In the second disputed issue, Plaintiff contends that the ALJ failed to provide clear and convincing reasons for finding Plaintiff not entirely credible. (JS at 26-27.)

In assessing the credibility of the allegedly disabling subjective symptoms, an ALJ may properly consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors;" "[t]ype, dosage, effectiveness, and adverse side-effects of any medication;" "[t]reatment, other than medication;" "[f]unctional restrictions;" "[t]he claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation." Bunnel v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc) (citations omitted); see also Soc. Sec. Ruling 96-7p;[6] 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only

---

[6] The Ruling lists factors to be considered such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Ruling 96-7p.

1 conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750
2 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack
3 of side effects from prescribed medication).
4      Although the Court acknowledges that the ALJ gave little consideration to
5 Plaintiff's mental impairments, either at the hearing or in her written opinion, the
6 Court agrees with the Commissioner that the ALJ set forth sufficient reasons for
7 finding Plaintiff not entirely credible, including Plaintiff's noncompliance with
8 prescribed medication, her ability to engage in some daily activities, and her
9 reports of feeling better after discontinuing medication.  (AR at 22.)
10      Accordingly, the Court finds that the ALJ's adverse credibility
11 determination was proper because (a) the discussion of Plaintiff's credibility
12 reflects consideration of the factors set forth in Social Security Ruling 96-7p, and
13 (b) the reasons were supported by substantial evidence and were sufficiently
14 specific to permit the Court to conclude that the ALJ did not arbitrarily discredit
15 Plaintiff's subjective testimony.

16 **C.**     **This Case Should Be Remanded for Payment of Benefits.**

17      The law is well established that the decision whether to remand for further
18 proceedings or simply to award benefits is within the discretion of the Court.  See,
19 e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at
20 603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  Remand is
21 warranted where additional administrative proceedings could remedy defects in the
22 decision.  Lewin, 654 F.2d at 635.  Remand for the payment of benefits is
23 appropriate where no useful purpose would be served by further administrative
24 proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the
25 record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th
26 Cir. 1986); or where remand would unnecessarily delay the receipt of benefits,
27 Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).
28      The Ninth Circuit also has held that "the district court should credit evidence

that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see also Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)[7]; Lester, 81 F.3d at 834; Smolen, 80 F.3d at 1292; Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989); Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1988-1401 (9th Cir. 1988); but see Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (the "crediting as true" doctrine is not mandatory in the Ninth Circuit; remanding for reconsideration of the claimant's credibility where the record contained insufficient findings as to whether the claimant's testimony should be credited as true).

Based on the foregoing authorities, when this test is met, the Court will take the improperly discredited testimony as true and not remand solely to allow the ALJ another opportunity to make specific findings regarding that testimony. This rule applies to improperly discredited opinions of treating or examining physicians.

Here, the Court has found that the ALJ improperly discredited the opinions of Plaintiff's treating and examining physicians. It is clear from the record that the ALJ would be required to find Plaintiff disabled if the opinions of Dr. Greenzang and Dr. Scott were fully credited. At Plaintiff's hearing before the ALJ, the Vocational Expert testified that an individual who was unable to work eight hours

---

[7] In Harman, the Ninth Circuit noted that this three-part test "really constitutes a two part inquiry, wherein the third prong is a subcategory of the second." Harman, 211 F.3d at 1178 n.7.

a day, forty hours a week, or would miss more than two days per month, would be precluded from all work.  (AR at 383.)  As stated above, Dr. Greenzang specifically concluded that Plaintiff would be likely to miss more than three days of work per month as a result of her impairment.  (AR 260.)

Accordingly, it appears to the Court that this is a case where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, and where remand would only unnecessarily delay the receipt of benefits.

## IV.
## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for the payment of benefits.

DATED:  September 21, 2007

HONORABLE OSWALD PARADA
United States Magistrate Judge